The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications and clarifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law and ultimate order.
Accordingly, the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing, and in a Pre-Trial Order dated June 5, 1997 as,
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee/employer relationship existed between the named employee and named employer at the time in question.
3. The employer is self-insured with Gallagher Bassett Services as the administrator.
4. The employee's average weekly wage is $454.27.
5. The defendant admits the employee sustained an injury on January 25, 1994.
6. The defendant admits the injury arose out of and in the course of employment and is compensable.
7. The defendant contests whether the employee's need for right and left shoulder replacement surgeries are related to the injury.
8. Various medical records and other documents have been stipulated into evidence and marked as Stipulated Exhibit #1.
 *********** EVIDENTIARY RULING
All objections and rulings on evidentiary matters are ruled upon consistent with the findings of fact and conclusions of law
Based upon all of the competent, credible and convincing evidence of record, the undersigned make the following additional
 FINDINGS OF FACT
1. Plaintiff worked as a utility helper for the defendant-employer beginning in 1988. His job duties involved lifting up to fifty pounds, using a ratchet wrench, and running an overhead crane.
2. On January 25, 1994, the employee tried to stop a 3,000 pound cylinder which had started spinning as it was being lifted by a crane. The plaintiff extended his right hand against the cylinder, which jerked his right shoulder upward. Defendant accepted this as a compensable injury.
3. Plaintiff had not experienced problems with his shoulders before this injury. Plaintiff did, however, have a history of Lupus for which he had received steroid treatment for two years.
4. After being initially treated at the emergency room, plaintiff was sent to Dr. H. J. Schulten, an orthopedic surgeon. Plaintiff's x-rays of his shoulder on January 31, 1994 were normal. Dr. Schulten diagnosed a shoulder strain and possible dislocation.
5. By February 8, 1994, plaintiff had slight tenderness and some stiffness in his right shoulder. However, he had full range of motion and negative impingement and apprehension. Dr. Schulten released plaintiff to return to work at full duty.
6. Beginning in April of 1994, plaintiff began experiencing problems with his shoulder again. Repeat x-rays revealed a subcortical fracture along the humeral head. An MRI revealed the presence of avascular necrosis, which involves flattening of the round humeral head, and for which plaintiff was at risk based on his prolonged use of steroids.
7. Upon referral from Dr. Schulten, plaintiff began treatment with Dr. Gary Poehling, who, on May 31, 1994 performed right shoulder arthroscopic surgery with debridement to remove loose bodies in plaintiff's shoulder. Following recovery from the surgery, plaintiff returned to full duty. On October 27, 1994, the plaintiff was rated with a twenty-five percent (25%) permanent partial disability to the right shoulder.
8. On November 7, 1995, plaintiff underwent a second arthroscopic surgery of the right shoulder and was rated with an additional five percent (5%) permanent partial disability. Dr. Poehling released plaintiff to return to work on February 5, 1996 with restrictions of no above-chest lifting and no extreme rotation of the shoulder joint. Plaintiff continued to work for the defendant-employer.
9. On June 13, 1996 plaintiff returned to Dr. Poehling with complaints of pain in both shoulders. X-rays on this date revealed the nearly complete collapse of the humeral head and loss of joint space on the right. There were also loose fragments on the left. Dr. Poehling recommended shoulder replacement surgery and referred plaintiff to Dr. Donald D'Allesandro, an orthopedic surgeon.
10. Plaintiff's first visit with Dr. D'Allesandro was on September 30, 1996. On January 22, 1997, Dr. D'Allesandro performed a partial replacement of plaintiff's left shoulder, followed by a total right shoulder replacement on May 13, 1997. Plaintiff was ultimately rated with a forty percent (40%) permanent partial disability rating for each shoulder.
11. Even though Dr. D'Allesandro testified at his deposition that plaintiff's injury by accident could have been a "possible" aggravating factor in the progression of his avascular necrosis, his overwhelming opinion was that plaintiff would have ultimately needed right shoulder surgery absent any trauma based on the degenerative process of avascular necrosis and that the surgery performed was "entirely" related to his pre-existing avascular necrosis as opposed to the compensable work injury. The doctor could only assert "possible" aggravation or acceleration of the pre-existing condition, which does not constitute a "material" aggravation or acceleration in the case at hand. He also opined that plaintiff's right shoulder replacement surgery was necessitated by the collapse of the humeral head, an inevitable consequence of plaintiff's pre-existing avascular necrosis, and not by plaintiff's injury by accident of January 25, 1994. His opinion was that plaintiff's left shoulder replacement surgery was not causally related to the injury at all.
12. Based upon the competent, credible, and convincing medical evidence in the record, plaintiff's ultimate need for right shoulder replacement surgery and left shoulder surgery was not causally related to his original compensable injury by accident of January 25, 1994, but was rather necessitated by the progression of his avascular necrosis. Further, there was no material aggravation or acceleration caused by the January 25, 1994 accident.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. The competent, credible, and convincing evidence of record fails to sufficiently support a finding that the employee-plaintiff's right total shoulder arthroplasty of May 13, 1997 was causally related to or materially aggravated or accelerated by his compensable injury by accident of January 25, 1994. N.C. Gen. Stat. § 97-2(6).
2. The competent, credible, and convincing evidence of record fails to support a finding that the employee-plaintiff's left shoulder hemiarthroplasty of January 22, 1997 was causally related to or materially aggravated or accelerated by his injury by accident of January 25, 1994. N.C. Gen. Stat. § 97-2(6).
3. The employee is not entitled to additional workers' compensation benefits in relation to the shoulder replacement surgeries. N.C. Gen. Stat. § 97-29, § 97-25.
 *********** ORDER
Under the law, plaintiff's claim must be, and the same is HEREBY DENIED.
This case is ORDERED REMOVED from the Full Commission hearing docket.
Each side shall bear its own costs.
This the ___ day of January, 1999.
 S/_________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/______________________ THOMAS J. BOLCH COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER